**HUFF et al. v. UNITED STATES.**

No. 13516.

United States Court of Appeals,
Fifth Circuit.

Nov. 23, 1951.

Henry N. Payton, Myer Goldberg, Newnan, Georgia, for appellant.

Lamar N. Smith, Asst. U. S. Atty., J. Ellis Mundy, U. S. Atty., Atlanta, Ga., for appellee.

Before JOSEPH C. HUTCHESON, Chief Judge, and BORAH, and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

The appellants, James Winfred Huff and Joe Ezra Johnston, were indicted on a charge of conspiracy to violate the Internal Revenue Laws, sections 2803, 2810, 2833, 2834, 3321, Title 26 U.S.C., prohibiting the distillation, possession, purchase, sale, transportation, deposit and concealment of non-tax paid distilled spirits.[1] The indictment alleged that the conspiracy set forth began on or about January 1, 1947, and continued down to on or about January 1, 1949. A trial was had before a jury and the appellants were found guilty and sentenced to imprisonment for a term of five years. They have appealed.

At the outset we are met with appellee's motion to dismiss the appeal on the ground that appellate jurisdiction is lacking because appellants failed to file a timely notice of appeal. The appellants were convicted on November 3, 1950, and thereafter filed a timely motion for new trial. On November 9, 1950, the trial judge overruled this motion, directed the preparation of a written order to conform with his ruling, and signed it, all of which was done in open court in the presence of the defendants and their counsel. The clerk, however, in conformance with local practice which relieved the clerk of the obligation to send a notice where the parties affected had actual notice of the entry of an order, did not mail to the defendants a notice of the entry of the order as required by Rule 49(c), Federal Rules of Criminal Procedure, 18 U.S. C. On December 7, 1950, appellants mailed a notice of appeal to the clerk which notice was returned the following day because of failure to take the appeal within ten days after entry of the order appealed from. On January 9, 1951, appellants filed a motion to set aside the order of November 9, 1950, denying their motion for new trial, and to require the clerk to conform to the requirements of Rule 49(c). A hearing was had and on January 12, 1951, the court entered an order setting aside its prior order of November 9, and on the same day entered an order again overruling appellants' motion for a new trial.[2] On January 16, 1951, the

---

1. In violation of Title 18 U.S.C. § 88 and in violation of Section 371, Title 18 U.S. C., effective September 1, 1948.
2. The court found as a matter of fact that the order overruling the motion for new trial was signed in open court in the presence of the movants and their counsel; that under these circumstances the

defendants filed a notice of appeal from the judgment of November 9, 1950, and the order of January 12, 1951.

Rule 37(a) (2), Federal Rules of Criminal Procedure, provides that an appeal by a defendant may be taken within 10 days after entry of a judgment or order appealed from but that if a motion for a new trial has been made within the 10-day period an appeal from a judgment of conviction may be taken within 10 days after entry of the order denying the motion. Rule 49(c) provides that immediately upon the entry of an order made on a written motion subsequent to arraignment the clerk must mail a notice thereof to each party affected by the order. In the case at bar no appeal was taken within the 10-day period after entry of the order of November 9, 1950, and the clerk did not give the prescribed notice. Therefore, the question presented is whether or not the clerk's failure to give notice had the effect of suspending the running of the time for appeal and whether, under the circumstances of this case, the trial judge was warranted in setting aside the order of November 9, and entering a new order overruling appellants' motion for a new trial. We are of opinion that both questions must be answered in the negative.

■ The Notes of the Advisory Committee on Rules, in discussing Rule 49(c), read as follows: "This rule is an adaptation for criminal proceedings of Rule 77(d) of the Federal Rules of Civil Procedure. No consequence attaches to the failure of the clerk to give the prescribed notice, but in a case in which the losing party in reliance on the clerk's obligation to send a notice failed to file a timely notice of appeal, it was held competent for the trial judge, in the exercise of sound discretion, to vacate the judgment because of clerk's failure to give notice and to enter a new judgment, the term of court not having expired. Hill v. Hawes, 320 U.S. 520, 64 S. Ct. 334, 88 L.Ed. 283, rehearing denied 321 U.S. 801, 64 S.Ct. 515, 88 L.Ed. 1088."

As indicated in the Note of the Advisory Committee the decision in Hill v. Hawes, 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283, was bottomed on the fact that the petitioner relied upon the provisions of Rule 77(d), Federal Rules of Civil Procedure, 28 U.S. C. Under those circumstances, the court held that the trial judge, in the exercise of a sound discretion, could vacate the former judgment and enter a new judgment, of which notice was sent in compliance with the rules, but the court did not rest its decision on the ground that Rule 77(d) makes notice of entry prerequisite to the finality of the judgment for purposes of appeal. The decision in Hill v. Hawes, however, is no longer important in civil cases because following the decision the Supreme Court amended Rules 73(a) and 77(d). Rule 73(a) now permits the District Court to extend the time for appeal, not exceeding 30 days, upon a showing of excusable neglect to learn of the entry of judgment, and Rule 77(d) now provides that lack of notice of the entry by the clerk does not affect the time to appeal or relieve from failure to appeal within the time allowed. In the instant case there is no suggestion that appellants relied on the provisions of Rule 49(c), Federal Rules of Criminal Procedure, and it affirmatively appears that they had actual notice of the entry of the order and could have taken a timely appeal. Consequently, there was no circumstance present to invoke the court's discretionary powers, if such it had. We are of opinion that no consequences attached to the failure of the clerk to give the prescribed notice and that the time for appeal began to run on November 9, 1950.

■■ Appellate jurisdiction in the federal courts is purely statutory and there is no right to appeal save as it is granted by statute or a rule of court, which is authorized by Congress and has the force of law. The purpose of rules limiting the time within which an appeal may be taken is to force an early termination of criminal cases. Fewox v. United States, 5 Cir., 77

---

clerk was not legally required to mail to each party affected thereby a notice thereof pursuant to Rule 49(c); and that no such notice was given. Nevertheless,

it concluded that it had the discretionary right to set aside its prior order overruling movants' motion for new trial.

F.2d 699. They are designed to fix a definite, ascertainable point in time when litigation shall be at an end unless an appeal has been taken within the time prescribed. They embody considerations of certainty and stability which from the earliest times have been regarded as of first importance. In Credit Co. v. Arkansas Central Railway Co., 128 U.S. 258, 9 S.Ct. 107, 32 L.Ed. 448, the Circuit Court used a *nunc pro tunc* order to make it appear that an appeal had been perfected within the two-year period then prescribed for bringing a writ of error or taking an appeal to the Supreme Court. In dismissing the appeal Mr. Justice Bradley said: "The attempt made, in this case, to anticipate the actual time of presenting and filing the appeal, by entering an order nunc pro tunc, does not help the case. When the time for taking an appeal has expired, it cannot be arrested or called back by a simple order of court. If it could be, the law which limits the time within which an appeal can be taken would be a dead letter." 128 U.S. at page 261, 9 S.Ct. at page 108.

■ The device employed by the trial judge in the instant case, of setting aside the court's first order and the re-entry of a *pro forma* order again denying appellants' motion for a new trial, if recognized would like the *nunc pro tunc* order in Credit Co. v. Arkansas Central Railway Co., make a dead letter of Rule 37(a) (2). For the reasons stated, we are of opinion that the action of the trial judge was not warranted and the motion to dismiss the appeal should be granted.

This leaves for consideration the timely appeal from the trial court's denial of appellants' motion for correction of sentence.[3] The indictment in this case charges a general conspiracy beginning on or about January 1, 1947, and continuing down to on or about January 1, 1949. There are thirty overt acts charged in the indictment, the first twenty-two of which are alleged to have been committed between April 3,

1947, and August 24, 1948, the last eight allegedly being committed between September 1, 1948, and December 7, 1948. After trial before a jury the appellants were convicted and sentenced to imprisonment for a period of five years.

Old Section 88, Title 18, U.S.Code provided that the parties to a conspiracy denounced by the statute should be imprisoned not more than two years. This section was revised, effective September 1, 1948, and became Section 371, Title 18, U. S. Code. In making this revision, the punishment provision was completely rewritten to increase the penalty from two years to five years.

Appellants here contend that the conspiracy alleged in the indictment constitutes a violation of old Section 88 only and, therefore, they could not be sentenced to a term of imprisonment in excess of two years. Appellants argue that the offense of conspiracy is complete upon the meeting of mind in an agreement for a violation of a federal statute; that persons so conspiring are subject to prosecution upon the commission of the first overt act; that, therefore, the offense was completed while Section 88 was still in effect; and that any law passed after commission of the offense which inflicts greater punishment for the act than was provided by law at the time the offense was committed is *ex post facto* and unconstitutional.

■ We think this argument lays too much weight on the ancient law of conspiracy and does not give due weight to changes made in the crime by the statutory requirement of an overt act. In Hyde and Schneider v. United States, 225 U.S. 347, 357, 32 S.Ct. 793, 799, 56 L.Ed. 1114, it was contended by the defendants that the union in unlawful purpose constituted the crime and that the requirement of an overt act did not give the offense criminal quality and extent. In discussing the point the court said, "It seems like a contradiction to say that a thing is necessary to complete

3. The motion was filed on January 9, 1951, in conformity with Rule 35, Federal Rules of Criminal Procedure, and under the provisions of 28 U.S.C. § 2255, which provide that a motion to correct an illegal sentence may be made at any time. The motion was denied on January 12, 1951, and notice of appeal was filed on January 16, 1951.

another thing, and yet that other thing is complete without it. \* \* \* The conspiracy, therefore, cannot alone constitute the offense. It needs the addition of the overt act. Such act is something more, therefore, than evidence of a conspiracy. It constitutes the execution or part execution of the conspiracy, \* \* \*. The successive overt acts are but steps toward its accomplishment, not necessarily its accomplishment."[4] And it is settled that conspiracy may be a continuing crime. In United States v. Kissel, 218 U.S. 601, 607, 31 S.Ct. 124, 126, 54 L.Ed. 1168, the court said: "\* \* \* the unlawful agreement satisfies the definition of the crime, but it does not exhaust it. \* \* \* when the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, and there is such continuous co-operation, it is a perversion of natural thought and of natural language to call such continuous co-operation a cinematographic series of distinct conspiracies, rather than to call it a single one. \* \* \* If they do continue such efforts in pursuance of the plan, the conspiracy continues up to the time of abandonment or success."

It is this reasoning which lies behind the recognized rule that the statute of limitations, unless suspended, runs from the last overt act during the existence of the conspiracy of which there is appropriate allegation and proof. Brown v. Elliott, 225 U.S. 392, 400, 401, 32 S.Ct. 812, 56 L.Ed. 1136; Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196.

■ This reasoning is especially pertinent to the case at bar. It is here alleged in the indictment, and supported by proof and verdict, that the conspiracy set forth was continuous and, being so, it is not a case where the appellants were subjected to a greater penalty for committing a crime

which had been consummated before the statute increasing the penalty was passed and became effective.

We are aware of no federal appellate court decision in point and certain it is that none has been cited. However, diligent research discloses that the Supreme Court of Illinois and the Supreme Court of Connecticut have had occasion to consider the precise issue presented. In People v. Walczak, 315 Ill. 49, 145 N.E. 660, where a statute of Illinois punishing conspiracies was amended during the existence of a continuing conspiracy so as to increase the punishment, it was held that the defendants were properly sentenced under the amended law. Also, in State v. Hayes, 127 Conn. 543, 18 A.2d 895, the information charged a continuing conspiracy beginning in 1930 and continuing until May 19, 1938. The statute applicable to the offense, in effect until 1937, provided 5 years as the maximum period of imprisonment. In 1937, however, the statute was amended to increase the maximum period of imprisonment to 15 years and the trial court imposed a sentence of more than 5 years but not exceeding 15 years. In an opinion by Chief Justice Maltbie, the court held that the defendant was properly sentenced under the act of 1937. A like result was reached in United States v. Jackson, D.C., 94 F.Supp. 912.

■ For the reasons stated, we hold that a statute imposing a greater penalty for a conspiracy, where the crime is still being carried on and continued after the date when the act becomes effective, does not violate the constitutional inhibition of *ex post facto* laws.

The appeal from the judgment of November 9, 1950, and the order of January 12, 1951, is dismissed, and the order overruling appellants' motion for correction of sentence is affirmed.

4. It was recognized in the early cases of United States v. Hirsch, 100 U.S. 33, 34, 25 L.Ed. 539, and Hyde v. Shine, 199 U. S. 62, 76, 25 S.Ct. 760, 50 L.Ed. 90, that the overt act required by the statute was necessary to "complete" the offense.