**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry Weldon TODD and James Clyde Short, Jr., Defendants-Appellants.**

No. 83–1748.

United States Court of Appeals,
Fifth Circuit.

June 14, 1984.

---

Walter E. Wilson, Odessa, Tex., for Todd.

Bill Alexander, Larry James Myrick, Odessa, Tex., for Short.

Edward C. Prado, U.S. Atty., San Antonio, Tex., Christopher A. Nuechterlein, Dirk D. Snel, Attys., Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for plaintiff-appellee.

Before GOLDBERG, RUBIN and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Larry Todd and James Short appeal their convictions for conspiracy, in violation of 18 U.S.C. § 371 (1976), to violate the Lacey Act, 16 U.S.C. §§ 3372(a)(1), 3373(d)(1)(B) (Supp.1981), which prohibits the sale of wildlife taken or possessed in violation of federal law—here, The Airborne Hunting Act, 16 U.S.C. § 742j–1 (1976). Short appeals his convictions for substantive violations of the Lacey Act and the Bald Eagle Protection Act, 16 U.S.C. § 668(a) (1976). Both appellants challenge the sufficiency of the evidence and contend that their convictions under the Lacey Act violated the constitutional prohibition of *ex post facto* laws since the alleged conspiracy began prior to amendments to the Act enhancing the penalties for its violation. We affirm the decision of the district judge except as to Short's substantive violation of the Lacey Act in Count II of the indictment.

## I.

Todd, a gunshop owner, offered hunters a package arrangement for airborne hunts of wildlife. The package included a guaranteed, trophy-size animal, transportation by helicopter, a guide (Short), use of guns provided by Todd, and services of a taxidermist. The cost of a hunt ranged from $1,000 to $5,000, depending on the type and number of game animals sought.

One hunter testified that on January 22, 1982, he went on a hunt with Short, killing a barbado sheep, for which pleasure he paid $600. Another hunter on the same trip admitted killing a young eagle, either golden or bald, a mule deer, and a javelina. Because these animals were not trophy-size he was not required to pay a fee for the hunt but agreed to pay $250 for expenses. A gun belonging to Todd was used on the

hunt. Both hunters testified on behalf of the government in exchange for reduced sentences for violations of the Lacey and Airborne Hunting Acts.

On April 1, 1982, Todd offered an airborne hunt for elk, mule deer, and antelope to another hunter. This conversation was captured on tape and played to the jury. There was evidence of other offers of hunts. In October or November 1981, for example, Todd offered a hunter an airborne hunt of whitetail deer, mule deer, big horn sheep, and possibly mountain lion or cougar for a price of $2,000. These events may have occurred prior to the November 16, 1981 effective date of the amendments to the Lacey Act enhancing the penalties for its violation. *See* 16 U.S.C. § 3373.

Todd and Short were each convicted of conspiracy to violate the Lacey Act and sentenced to one year imprisonment and a $10,000 committed fine. Short was convicted of a substantive violation of the Lacey Act, for which he received a sentence of six months imprisonment, to run consecutively to the sentence for conspiracy, and a $5,000 fine; he was also convicted of violating the Bald Eagle Protection Act, for which he received a suspended sentence of one year imprisonment.

## II.

■ Todd and Short argue that their convictions under the Lacey Act violated the constitutional prohibition against *ex post facto* laws, U.S. Const., art. I, § 9, cl. 3, and the Due Process Clause of the Fifth Amendment. The conspiracy began prior to November 16, 1981, the effective date of the amendments enhancing the penalties for violation of the Lacey Act. 16 U.S.C. § 3373. Appellants maintain that their convictions were void since the agreement to violate the Act antedated the amendments. We disagree.

The former version of the Lacey Act, which dates back to 1900, made illegal the transportation, receipt, acquisition, or purchase of wild mammals or birds "killed, taken, purchased, sold or otherwise possessed in any manner contrary to any Act

of Congress ... State [law] ... or foreign [law]." 18 U.S.C. § 43, *amended by* 16 U.S.C. §§ 3371, 3372, 3373 (Supp. V 1981). The act imposed a penalty of not more than a $500 fine or six months imprisonment. *Id.* The 1981 amendments proscribed essentially the same conduct as the prior version, 16 U.S.C. §§ 3372(a)(1), (2), but enhanced the penalty for violations. 16 U.S.C. § 3373. For knowing violations in which the market value of the animals killed exceeded $350, the amendments imposed a penalty not to exceed a $20,000 fine or five years imprisonment. 16 U.S.C. § 3373(d)(1). For knowing violations involving animals with a market value less than $350, the amendments imposed a maximum penalty of a $10,000 fine and one year imprisonment. *Id.* § 3373(d)(2).

The *ex post facto* clause applies to any law that imposes punishment for an act which was not criminal at the time it was committed or that aggravates a crime making it greater than it was when it was committed. *See Marks v. United States*, 430 U.S. 188, 192, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977); *United States v. Mann*, 517 F.2d 259, 269 (5th Cir.1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). Since the amendments to the Act enhance the penalty for its violation, prosecution of acts occurring prior to its effective date under the new felony provisions would violate the *ex post facto* prohibition.

■ Since the claim of an *ex post facto* violation was not urged in district court, this court may only consider it on appeal if it constituted plain error under Rule 52(b), Fed.R.Cr.P. *Sykes v. United States*, 373 F.2d 607, 612 (5th Cir.1966), *cert. denied*, 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967). Plain error is that which is "so obvious that failure to notice it would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Brown*, 634 F.2d 819, 829 (5th Cir.1981), quoting *United States v. Musquiz*, 445 F.2d 963, 966 (5th Cir.1971); 3A C. Wright, *Federal Practice and Procedure* § 856 at 340 (1982). Whether an ap-

pellate court should take notice of error not raised in the district court must be determined on the basis of the facts of the particular case. *United States v. Jones*, 673 F.2d 115, 119 (5th Cir.1982); 3A C. Wright, *supra*.

■ The specific error complained of here is that the district judge failed to give proper instructions to the jury regarding the dates of the alleged acts constituting the conspiracy, so that the jury considered evidence of hunts or offers of hunts occurring prior to the 1981 amendments in reaching a guilty verdict. This court addressed a similar question in *United States v. Brown*, 555 F.2d 407 (5th Cir.1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). There, several police officers were accused of racketeering and conspiracy to violate the racketeering act in a scheme spanning a period of two decades. The scheme involved numerous individuals and many of the acts took place prior to the effective date of the Organized Crime Control Act of 1970, which made racketeering illegal. The district judge did not advise the jury of the effective date of the act or that it must find evidence of a conspiracy of which the accused was a member after the effective date of the Act. Thus, the appellants were indicted and tried for conduct which occurred prior to the enactment of the statute which made it unlawful. This court therefore found the convictions constitutionally defective.

In *Brown* the conspiracy provisions of the act were applied retroactively in the indictment and in the jury instructions, thereby allowing appellants to be convicted

for acts that were innocent before the law was passed. *Id.* at 420. By contrast, the indictment in the case before us alleges only two overt acts by the appellants that occurred prior to the effective date of the Lacey Act amendments; all of the other acts occurred during the effective period of the amendments.[1] Most of the evidence focused on events that occurred within the effective date of the amendments. The record includes a tape recording of Todd making an offer of an airborne hunt in April 1982. Witnesses testified that Short took them on an airborne hunt in January 1982. Unlike *Brown* the record here clearly establishes violations of the amended act by the appellants during the relevant time period. In light of this evidence we cannot say that failure to give the jury instruction was so deficient as to result in the likelihood of a grave miscarriage of justice or circumstances that seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Jones*, 673 F.2d at 119.

■ Furthermore, a conspiracy is a continuing crime; it is not completed at the time the agreement was entered. 18 U.S.C. § 371 (1976); *Huff v. United States*, 192 F.2d 911, 914–15 (5th Cir.1951). We have held that "where a crime is still being carried on and continued after the date when the act becomes effective," a statute imposing a greater penalty for conspiracy does not violate the constitutional prohibition of *ex post facto* laws. *Huff*, 192 F.2d at 915. *Accord United States v. Campanale*, 518 F.2d 352, 365 (9th Cir.1975). In

---

1. The indictment alleges the following overt acts. Only items (b) and (e) occurred prior to the effective date of the Act.

 a. The Acts described on Count II through IV of this indictment are incorporated herein by reference, and constitute overt acts.

 b. In or about November 1981 LARRY WELDON TODD, defendant, issued a check for $9,000 to JAMES CLYDE SHORT, JR., defendant.

 c. In or about December 1981 LARRY WELDON TODD, defendant, issued a check for $15,000 to JAMES CLYDE SHORT, JR., defendant.

 d. In or about April 1982 LARRY WELDON TODD, defendant, offered to Bruce Young an airborne hunting trip for $2500 and $3000.

 e. In or about October 1981 LARRY WELDON TODD, defendant, offered to Brooks Harmon, Jr., an airborne hunting trip for several thousand dollars.

 f. In or about November 1981 KARL DOUGLAS BROSIG, defendant, had a conversation with Jerry Taylor.

 g. During the period of this conspiracy KARL DOUGLAS BROSIG, defendant, did taxidermy work on game animals killed by the individuals.

this case the conspiracy clearly continued past the effective date of the amendments enhancing the penalty.

### III.

Todd and Short also claim that the evidence is insufficient to sustain their convictions under any of the counts in the indictment. "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc).

### A.

 Both Todd and Short contend that the evidence is insufficient to establish a conspiracy. To prove a conspiracy, the government must show beyond a reasonable doubt that a conspiracy existed, that the appellants had knowledge of it, and that with this knowledge they voluntarily became a part of it. *United States v. Bankston,* 603 F.2d 528, 531 (5th Cir.1979). In this case the testimony of witnesses who participated in the conspiracy provided direct evidence of its existence. The government produced a taped telephone conversation in which Todd offered to provide an airborne hunt of wildlife. Witnesses testified that Short conducted a hunt in January 1982. Jurors could have reasonably inferred that the use of Todd's gun on the hunt conducted by Short in January provided evidence of a conspiracy between the two. They may reasonably have inferred that Short was the guide who conducted the hunts offered by Todd. We hold that there was sufficient evidence to support the jury finding of guilty as to the conspiracy charge.

### B.

 Todd and Short also contend that the government failed to establish the two essential elements of the Lacey Act: (1) that they knowingly promoted airborne hunts of wildlife, and (2) that the wildlife

had a market value in excess of $350. To warrant felony punishment the government must prove that each appellant knew that wildlife with a market value of $350 was taken in violation of state or federal law. 16 U.S.C. § 3373(d)(1)(B). The government need not prove that the appellants knew of the existence of the Lacey Act itself, only that they knew of the illegal nature of the game. S.Rep. No. 123, 97th Cong., 1st Sess. 11, *reprinted in* 1981 U.S.Code Cong. & Admin.News 1748, 1758. Todd testified that he knew that hunting from a helicopter was a violation of federal law. Short's knowledge may be inferred from the totality of the circumstances of the case. *See United States v. Fonseca,* 490 F.2d 464, 470 n. 5 (5th Cir.), *cert. denied,* 419 U.S. 1072, 95 S.Ct. 660, 42 L.Ed.2d 668 (1974). Short had a permit to hunt coyotes from the air and had extensive experience as a hunter. From these facts the jury could reasonably have inferred that Short was aware that hunting animals from an aircraft violated federal law. We see no deficiency in the proof of this element.

### C.

The appellants also contend that the government failed to establish that the game taken had a market value in excess of $350. On the January 1982 hunt one hunter paid a fee of $600 and killed a barbado sheep, which does not qualify as wildlife under Texas law, *see* Tex.Parks & Wild.Code § 63.001 (Vernon 1976), and therefore does not constitute a violation of the Lacey Act. *See* 16 U.S.C. § 3372(a). The other hunter paid only $250 to cover the expenses of the hunt since the eagle, deer, and javelina were not of sufficient size to qualify as trophies under the terms of the guaranty. Appellants therefore maintain that the $350 market value was not established.

 We have no difficulty with the convictions for conspiracy to violate the Lacey Act. Under the conspiracy charge the government is only required to prove that at least one overt act was taken by one of the conspirators in furtherance of

the conspiracy; it need not prove that the substantive offense was consummated. *United States v. Jacobs*, 451 F.2d 530, 539–40 (5th Cir.1971), *cert. denied*, 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972). Both Todd and Short offered airborne hunts of wildlife at prices ranging from $1,000 to $5,000. A commercial arrangement whereby a professional guide offers his services to obtain wildlife illegally is an offer to sell wildlife. S.Rep. No. 123, 97th Cong., 1st Sess. 12, *reprinted in* 1981 U.S. Code Cong. & Admin.News at 1759. The best indication of the value of the game "sold" in this manner is the price of the hunt. The evidence thus establishes that the appellants conspired to take game with a market value exceeding $350.

### D.

■ Short was convicted of a substantive violation of the Lacey Act. To establish such a violation, the government must prove that the market value of the animals taken exceeded $350. 16 U.S.C. § 3373(d)(1). The only evidence the government offered as to the actual value of the game taken was the price of $1,200 quoted in the offer by Short and the $250 amount actually paid for the hunt by the hunter who killed the wildlife. The government argues that this proof is adequate to support the conviction inasmuch as one hunter paid $600 for the hunt, even though he did not kill wildlife; and the hunt was part of a commercial operation, the target of the felony provision of the Act. *See* S.Rep. No. 123, 97th Cong., 1st Sess. 11, *reprinted in* 1981 U.S.Code Cong. & Admin.News at 1759.

We cannot agree. It is true that, had one of the animals been large enough to mount as a trophy, the proof would have supported a value of $1,200. Nonetheless,

the statute requires proof of the value of the wildlife actually taken.[2] The government offered no evidence that the value of the dead eagle, deer, or javelina exceeded $350. Consequently, we hold that the evidence was insufficient to support Short's conviction under the substantive violation of the Lacey Act. That conviction is reversed.

### IV.

We affirm the conviction of Larry Todd on count I of the indictment and affirm the conviction of James Short on counts I and III. The government failed to prove a felony violation of the Lacey Act against James Short under count II. Double jeopardy bars his retrial. *Burks v. United States*, 437 U.S. 1, 10–11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). The sentences imposed on Short are vacated and we remand the case for resentencing of Short on counts I and III of the indictment. The district court, upon resentencing, may impose no more than a maximum sentence of one year and six months imprisonment, together with no greater than $15,000 fine.

AFFIRMED as to Larry Weldon Todd; AFFIRMED IN PART and REVERSED IN PART as to James Clyde Short, Jr. and REMANDED FOR RESENTENCING.

---

**2.** Criminal Penalties

 (1) Any person who—

 . . . .

 (B) violates any provision of this chapter (other than section 3372(b) of this title) by knowingly engaging in conduct that involves the sale or purchase of, the offer of sale or purchase of, or the intent to sell or purchase, fish or wildlife or plants with a market value in excess of $350, knowing that the fish or wildlife or plants were taken, possessed, transported, or sold in violation of, or in a manner unlawful under, any underlying law, treaty or regulation, shall be fined not more than $20,000 or imprisoned for not more than five years or both.