UNITED STATES of America,
Plaintiff–Appellant,

v.

Ronnie DeMASTERS,
Defendant–Appellee.

No. 88–1940.

United States Court of Appeals,
Tenth Circuit.

Jan. 17, 1989.

Peter Steenland, Jr. (William L. Lutz, U.S. Atty., Robert J. Gorence, Asst. U.S. Atty., Albuquerque, N.M., and Roger J. Marzulla, Asst. Atty. Gen., James C. Kilbourne, Robert L. Klarquist, John T. Webb and Vicki L. Plaut, Attys., U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., with him on the briefs), U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Penni Adrian (Ron Koch, on the brief), Albuquerque, N.M., for defendant-appellee.

Before MOORE, Circuit Judge, BRIGHT*, Senior Circuit Judge, and EBEL, Circuit Judge.

BRIGHT, Senior Circuit Judge.

The United States, in a three-count indictment, charged Ronald DeMasters with violating the provisions of the Lacey Act relating to an unlawful sale of wildlife taken in violation of state law. *See* 16 U.S.C. §§ 3372(a)(2)(A) and 3373(d)(1)(B) (1982).[1] The district court[2] dismissed the indictment on the ground that in furnishing guiding services DeMasters had not engaged in conduct prohibited by the Act. The Government appeals, and we affirm.

In arguing for reversal, the Government presents two issues: (1) whether the furnishing of guiding services for hunting wildlife constituted a sale of that wildlife within the meaning of the Act, and (2) if

---

* Honorable Myron H. Bright, United States Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Congress recently amended the Lacey Act. Pub.L. No. 100–653, 102 Stat. 3825 (Nov. 14, 1988). The amendment, discussed at page 330 of this opinion, does not affect the disposition of this case. Citations in the opinion are to the statutory provisions in effect at the time of the alleged offenses in 1984 and 1986.

2. The Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico.

not, whether count I of the indictment can be sustained in the circumstances of this case, where the provider of guiding services controlled the property on which the hunt was conducted and obtained an additional fee conditioned on a successful killing of wildlife. The district court responded to these issues in the negative, and we agree.[3]

## I. BACKGROUND

Ronald DeMasters was a co-owner of Alpine Hunts, Inc., a hunting outfitter in Chama, New Mexico. Through lease arrangements with landowners in the area of Chama, DeMasters possessed the exclusive right to arrange hunts for the purpose of taking wildlife on such property. He serviced hunters with guides who took client hunters to the property to hunt wildlife. He charged the hunter either by the hunt or, in some cases, by the animal. The indictment related to hunters shooting wild game out of season or otherwise in violation of New Mexico game laws.

## II. ANALYSIS

The Lacey Act, first enacted in 1900, 31 Stat. 187, outlaws interstate traffic in birds and other animals illegally killed in their state of origin. The Act, as amended in 1981, Pub.L. No. 97–79, 95 Stat. 1073, makes it unlawful to "import, export, transport, sell, receive, acquire, or purchase" wildlife, fish, or plants taken or possessed in violation of federal or Indian law, or taken, possessed, transported, or sold in violation of state or foreign law. 16 U.S.C. § 3372(a) (1982).

The penalty section, 16 U.S.C. § 3373 (1982), authorizes criminal sanctions of a fine not more than $20,000 or imprisonment of not more than five years, or both, for knowingly engaging in conduct that involves the illegal sale of wildlife with a market value exceeding $350.

 In this case, each count of the indictment charged separate violations for knowingly engaging in conduct involving the sale of wildlife valued in excess of $350 (count I, a buck mule deer; count II, a black bear; and count III, two elk). In each instance covered by the indictment, DeMasters furnished guides for the hunters who illegally shot and took the game in question. As to each count, the Government asserts that providing guiding services constituted a *sale* for more than $350 within the language of the Act. The Government relies on *United States v. Todd*, 735 F.2d 146 (5th Cir.1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985) and relies on the provisions of a Senate Report quoted on page 329 of this opinion.

In the *Todd* case, Larry Todd and James Short were convicted of conspiracy to violate the Lacey Act. Todd, who offered arrangements for hunting wildlife by air and Short, a guide, appealed their convictions and argued several alleged deficiencies underlying these convictions. In its opinion sustaining the conspiracy convictions, the court stated:

> Both Todd and Short offered airborne hunts of wildlife at prices ranging from $1,000 to $5,000. A commercial arrangement whereby a professional guide offers his services to obtain wildlife illegally is an offer to sell wildlife. S.Rep. No. 123, 97th Cong., 1st Sess. 12, *reprinted in* 1981 U.S.Code Cong. & Admin.News at 1759. The best indication of the value of the game "sold" in this manner is the price of the hunt. The evidence thus establishes that the appellants conspired to take game with a market value exceeding $350.

*Todd*, 735 F.2d at 152.

The defendant, to the contrary, in the district court and before us, relies on *United States v. Stenberg*, 803 F.2d 422 (9th Cir.1986). In that case, Circuit Judge Reinhardt, writing for a unanimous panel, rejected the Government's contention that providing guiding services or a hunting license constituted the "sale of wildlife" for the purposes of the Lacey Act. The court

---

**3.** The district court dismissed the indictment after hearings in response to the defendant's motion to strike or dismiss the indictment.

held "that the Lacey Act's prohibition of the 'sale of wildlife' does not apply to the sale of guiding services or hunting permits." *Id.* at 437. The court reasoned that "[t]he statute simply does not cover such conduct. To construe the Act as the government suggests would violate the constitutional guarantee of due process." *Id.*

In *Stenberg,* as here, the Government relied on the Senate Report and *United States v. Todd* as grounds for sustaining of convictions. Judge Reinhardt's opinion on these contentions is instructive and persuasive to this court. We quote pertinent portions of that opinion.

> The government relies primarily on the Senate Report on the Lacey Act for its argument that the provision of guiding services or a hunting license constitutes the "sale of wildlife" for purposes of the Act. That Report states:
>
> > The "commercial activity" portion of Section 4(d)(1) does not encompass the dealings of a hunter with his taxidermist. Such dealings clearly do not constitute a sale or purchase of wildlife. Similarly, the dealings of a hunter with his travel agent or an airlines [sic] to arrange a trip for the acquisition of wildlife clearly does not constitute a sale or purchase of wildlife. However, a commercial arrangement whereby a professional guide offers his services to illegally obtain wildlife is, in effect, an offer to sell wildlife. When such an offer is made with the requisite knowledge of the illegal nature of the act, Section 4(d)(1) will apply. As with Section 4(d)(2), the Act's criminal culpability requirement assures that innocent violators of the Act will not be subject to criminal penalties.
>
> S.Rept. No. 123, 97th Cong., 1st Sess. 12, *reprinted in* 1981 U.S.Code Cong. & Admin.News at 1748, 1759. Legislative history may not, however, be used to bring within a criminal statute conduct that is not clearly encompassed within the ordinary meaning of the provision. *Cf., e.g., Aronsen v. Crown Zellerbach,* 662 F.2d 584, 588 n. 7 (9th Cir.1981) ("we are not

> free to substitute legislative history for the language of the statute"), *cert. denied,* 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). As we explained *supra,* "one 'is not to be subjected to a penalty unless the *words of the statute* plainly impose it.'" *United States v. Campos–Serrano,* 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971) (quoting *Keppel v. Tiffin Savings Bank,* 197 U.S. 356, 362, 25 S.Ct. 443, 445, 49 L.Ed. 790 (1905)) (emphasis added). A person is not required to look beyond the face of a statute and research its legislative history in order to determine whether acts not within the statute's language are nevertheless prohibited.

*Stenberg,* 803 F.2d at 436.

In rejecting the authority of *Todd,* the Ninth Circuit further commented:

> We recognize that the Fifth Circuit has stated, in *United States v. Todd,* 735 F.2d 146 (5th Cir.1984), that the provision of professional guiding services constitutes an offer to sell wildlife under the Lacey Act. *Id.* at 152. However, the court made its statement without any analysis whatsoever. It did not discuss either the language of the Act or the established rule that criminal provisions are to be construed narrowly; it merely cited the Senate Report quoted *supra.* The court's cursory treatment of the guiding services issue may be due to the fact that, as far as one can tell from the opinion, the issue whether such services are covered by the Act was not even raised by the parties. The court made its conclusory statement in a discussion of the Act's market value requirement. In any event, based on the language of the Lacey Act and the strictness with which criminal prohibitions are to be construed, we must respectfully disagree with the statement contained in *Todd.*

*Stenberg,* 803 F.2d at 436–37.

We are persuaded by the *Stenberg* opinion and reject the Government's contentions that the mere furnishing of guiding services on a wild animal hunt falls within the parameters of the "sale of wildlife" provisions of the Lacey Act.

■ The Government further asserts that the facts underlying count I constituted a violation of the Act as a sale of wildlife. At a separate hearing relating to the motion to dismiss count I, the evidence disclosed special circumstances relating to the killing of a buck mule deer.

According to the Government's evidence, DeMasters agreed to furnish George Brown of Kentucky hunting services for a five-day hunt for elk including food, lodging, horses and guides for a fee of $2,500. DeMasters also told Brown that on the hunt, Brown could shoot a bear for no additional fee and that he could shoot a mule deer for an extra fee of $2,500. On the fourth day of the hunt, before Brown shot his elk, Brown and his guide Van Hale, DeMasters' employee, spotted a mule deer. Brown and Van Hale conversed about the fee arrangements previously made with DeMasters. Brown then shot the deer which was standing on a ridge several hundred feet away from the hunter. The shooting occurred on land leased by DeMasters for hunting purposes. The shooting occurred outside the deer hunting season.

The Government argues that the conditioning of an additional sum of money on the taking of the deer was more than a sale of guiding services. According to the Government, "DeMasters sold Brown the right to take a mule deer from property exclusively controlled by DeMasters [and] [t]he transaction was, without doubt, a 'sale' of wildlife * * *." (Brief at 31).

The district court disagreed and so do we. As the opinion in *Stenberg* observed, a "common definition of the word 'sell' * * * means the act of giv[ing] up (property) to another for money or other valuable consideration." 803 F.2d at 435 (quoting *Webster's Third New International Dictionary (Unabridged)* 2061 (1976)).

DeMasters provided guiding services, not the transfer of wildlife. The hunter still needed to bag his game.

The facts in the instant case cannot be distinguished from *Stenberg* in any material way. In *Stenberg*, the hunter was *guaranteed* an elk and Stenberg furnished guiding services and a special season elk tag to the hunter which only authorized killing of an elk in areas other than where the hunter actually shot his elk. In both this case and *Stenberg*, the arrangement provided for guiding services, not the transfer and sale of a wild animal. Although in the present case, the hunt occurred on land leased to DeMasters, the control of the land did not place wild animals under DeMasters' control so as to make DeMasters the seller of the animals by reason of providing guiding services. Moreover, less favorable to the Government than in *Stenberg*, DeMasters did not guarantee Brown that the guide would necessarily provide the animal which Brown could successfully shoot and kill. As the Ninth Circuit observed:

We do not believe an ordinary person would consider the sale of guiding services or a hunting permit to be a sale of wildlife. These acts would be viewed as providing the buyer the opportunity to kill wildlife, but they would not be considered as an actual sale of the wildlife itself. At the very least, one would have to speculate whether such conduct falls within the prohibition on "selling wildlife." Such uncertainty in meaning cannot be tolerated in a criminal provision.

*Id.* at 436. Thus, we determine that the district court properly dismissed count I.

We observe that recently Congress has amended the statute to include guiding services as a violation of the Lacey Act. Newly added section 3372(c) provides that "[i]t is deemed to be a sale of fish or wildlife in violation of this Act for a person for money or other consideration to offer or provide (A) guiding, outfitting, or other services or (B) a hunting or fishing license or permit * * *." Pub.L. No. 100–653, 102 Stat. 3825 (Nov. 14, 1988). Thus, the apparent loophole in the law now has been closed.

The Government acknowledges that the amendment has prospective application only, and does not affect the disposition of this case. Therefore, for the case now before us we are bound to affirm the dismissal of the indictment.

AFFIRMED.