F I L E D
**United States Court of Appeals
Tenth Circuit**

**APR 1 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GREG J. ANDERSON,

      Defendant-Appellant.

No. 01-1575
(D.C. No. 00-CR-471-N)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **SEYMOUR**, **EBEL**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

Defendant Greg J. Anderson, a Colorado hunting outfitter, was convicted

by jury of three violations of the Lacey Act. The first, for knowingly engaging in

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

or aiding the interstate sale and transport of an illegally taken animal, 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(2), and 18 U.S.C. § 2, arose out of an October 1996 Colorado hunt in which Anderson used another hunter's tag on a deer taken, without a license, by Duwayne Lewis, who had the antlers mounted on a plaque he brought back to Wyoming.    The second and third violations, for knowingly engaging in the interstate sale and transport of an illegally taken animal worth in excess of $350, §§ 3372(a)(2)(A), 3373(d)(1)(B), and knowingly submitting a false record with respect to the same, §§ 3372(d)(2), 3373(d)(3)(A)(ii), arose out of a January 1997 Colorado hunt in which the again-unlicensed Lewis killed a mountain lion that Anderson fraudulently reported as his own kill, enabling Lewis to bring the animal back to Wyoming for mounting.  The district court sentenced Anderson to three years of probation, four months of home detention, and 100 hours of community service.  He now appeals, contending his convictions must be reversed for lack of evidence.

> We review sufficiency of evidence claims de novo.  Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  In reviewing the evidence, we do not weigh conflicting evidence or consider witness credibility, as that duty is delegated exclusively to the jury. We resolve any conflicts in the evidence in favor of the Government.

*United States v. Van Tieu*, 279 F.3d 917, 921-22 (10th Cir. 2002) (citations omitted).  Guided by these principles, we affirm.

**Mule Deer Count**

Anderson claims the government failed to prove he knew or should have known that the deer had been taken illegally, i.e., that Lewis did not have the necessary license when he shot the deer. However, Lewis testified in pertinent part that (1) when he arrived the day before the hunt, he told Anderson that he still needed to purchase a deer license; (2) Anderson actually persuaded him not to buy the license, saying he should save his money and use a license purchased by Anderson's wife, Terri; (3) pursuant to arrangements with a local rancher, Lewis and Anderson hunted for deer over the next two days; (4) when, on the second day, Lewis shot a deer, Anderson went to the ranch house to telephone Terri to bring her license; [1] and (5) after Terri arrived, Anderson filled out a tag and attached it to the deer's antlers (a photograph of the deer admitted into evidence showed something wrapped around a horn, and Lewis identified this as the tag). As a factual matter, Lewis' testimony clearly reflected Anderson's knowledge that the deer had been taken illegally.

---

[1]     Anderson insists Lewis' story does not make sense, because there was no reason why Terri would not have just given Lewis her license before the men left on the hunt. This ignores a practical point made at trial by Lewis, who noted that requiring Terri to bring her license to the ranch ensured that the purported killer of the deer was at the scene in the event of an encounter with game officials.

Anderson insists this testimony was legally deficient because Lewis "had severe credibility problems" in light of his admittedly illegal conduct, his lenient treatment by authorities, inconsistencies in the story he related to investigators, to the grand jury, and at trial, and, finally, the contrary testimony of Anderson and his wife. *See* Aplt. Op. Br. at 14-16. This line of argument proceeds from a basic misunderstanding of the role of an appellate court. In reviewing evidence for legal sufficiency, we do not assess witness credibility–that is a duty "delegated exclusively to the jury;" rather, "we presume that the jury's findings in evaluating the credibility of each witness are correct." *United States v. Evans*, 318 F.3d 1011, 1018 (10 th Cir. 2003) (quotation omitted). We "simply determine whether [the government's] evidence, *if believed*, would establish each element of the crime;" we do not decide whether the government's evidence *should be* believed. *United States v. Vallo*, 238 F.3d 1242, 1247 (10 th Cir. 2001) (emphasis added and quotation omitted). We do not mean to suggest that we would otherwise find the specific points advanced by Anderson particularly compelling. Lewis did not actually exculpate himself by inculpating Anderson; indeed, his admission of illegal conduct was an essential predicate for Anderson's guilt. Lewis received some punitive leniency, but this was explored on cross-examination. And the few cited inconsistencies in his testimony were ambiguous, collateral, minimal, and/or obviously explicable in terms of situational considerations.

Anderson further argues that, in acquitting his wife of a Lacey Act charge in connection with the mule deer, the jury must have found Lewis' story about the illegal tagging wholly incredible and, aside from that testimony, there was no evidence to convict Anderson himself either. Much like his credibility objection, this argument is both legally inapposite and factually unpersuasive. As a legal matter, it confounds sufficiency-of-the-evidence review with the issue of verdict consistency, contrary to the express teachings of *United States v. Powell*, 469 U.S. 57 (1984). In *Powell*, the Court reaffirmed longstanding precedent holding that relief is not available to a criminal defendant on the basis of inconsistent verdicts, in part because

> a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts. This review should not be confused with the problems caused by inconsistent verdicts. *Sufficiency-of-the-evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. This review should be independent of the jury's determination that evidence on another count was insufficient.* The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilt beyond a reasonable doubt. We do not believe further safeguards against jury irrationality are necessary.

*Id.* at 67 (emphasis added and citations omitted). After *Powell*, courts have been careful to recognize and reject arguments, like Anderson's, which "improperly conflate[] the distinction between insufficiency of the evidence and inconsistent

-5-

verdicts."[2] *United States v. Veal*, 153 F.3d 1233, 1252 (11 th Cir. 1998); *see, e.g.*, *United States v. Abbott Washroom Sys., Inc.*, 49 F.3d 619, 622 (10 th Cir. 1995); *United States v. Morehead*, 959 F.2d 1489, 1502-03 (10 th Cir. 1992).

Once again, we note that our reliance on a preemptive legal deficiency in Anderson's objection should not imply a concession that the objection otherwise may have substance. As sketched above, Lewis' testimony that Anderson knew Lewis did not have a deer license (indeed, persuaded him not to buy one) and then used someone else's license–it did not matter whose–to tag the deer Lewis killed, was plainly sufficient to prove Anderson knew the deer was taken illegally. By contrast, the government's case against Terri Anderson was that *it was her license* that was used to tag the deer. No one, including Lewis, testified that they actually saw the name on the license used to tag the deer (Lewis expressly conceded he could not say "beyond a reasonable doubt" that it was Terri Anderson's tag). Certainly, the circumstances Lewis recounted indicated it was hers, but a jury could have decided that, absent a direct personal observation, there was room for reasonable doubt.

In sum, there was legally sufficient evidence to convict Anderson on the mule deer count, and his wife's acquittal does not undermine his conviction.

---

[2] In his reply brief, Anderson's challenge on the mule deer count is explicitly stated in terms of verdict inconsistency. Reply Br. at 1. Of course, in that regard *Powell* and its progeny straightforwardly preclude the claim.

**Mountain Lion Counts**

Anderson challenges the evidence supporting his convictions on both of the mountain lion counts in three respects. We may summarily dispense with one of these in light of our previous discussion of an analogous objection on the mule deer count. Anderson notes that his knowledge that Lewis had no license when he killed the lion was established solely on the basis of testimony from Lewis himself, and Anderson reasserts his charge that Lewis was not a credible witness. As explained earlier, however, witness credibility is a matter left to the directly informed judgment of the jury, not the remote speculation of an appellate court. We therefore turn to Anderson's remaining two evidentiary challenges.

**A.      Insufficient Proof of "Sale or Offer to Sell" Element**

"Providing outfitting or guiding services for a fee is deemed to be a 'sale' for purposes of the Lacey Act." *United States v. LeVeque*, 283 F.3d 1098, 1105-06 (9 th Cir. 2002) (applying 1988 amendment of § 3372(c)); *see United States v. DeMasters*, 866 F.2d 327, 330 (10 th Cir. 1989). Thus, the government alleged Anderson was criminally liable for "selling" the lion killed by Lewis because the hunt was undertaken pursuant to an outfitting contract for which Lewis had paid $1,500. A complication for the government's theory was that the contract in question specified that the parties' seven-day hunt was to take place in January 1996, a year before the events underlying this prosecution. However, the

January 1996 hunt was aborted after just three days as a result of equipment breakdowns and unpromising conditions, and the government offered testimony from Lewis that Anderson agreed to resume the paid-for hunt in January 1997. Anderson denied any such informal extension of the 1996 contract, testifying that he took Lewis out in 1997 purely out of a friendship that had grown between them over the course of the previous year. The jury evidently chose to believe Lewis.

Anderson points to a number of facts that he insists contradict Lewis' story. Some of these do provide circumstantial support for Anderson's contrary account. Anderson had no binding obligation to extend the 1996 outfitting contract, under which Lewis assumed the risk of equipment failure and an unsuccessful hunt. Also, the two men informally hunted together a couple of times later in 1996, including the mule deer hunt. These facts obviously do not conclusively refute Lewis' testimony, however. Moreover, the government's case did not rely solely on the intrinsic plausibility of Lewis' bald statement that Anderson agreed to extend the 1996 contract. Anderson's long, arduous tracking of the lion that he let Lewis shoot corroborates Lewis' story that Anderson was intent on completing the contract begun so disappointingly the year before–as did Anderson's prompt offer to contract for a second lion hunt once this carryover obligation on the first was satisfied. In the end, we are again presented with a conflict in the evidence

which we must resolve as the jury did, in favor of the government. *Van Tieu*, 279 F.3d at 922.

**B.     Indeterminate Proof Regarding Who Fired the Fatal Shot**

Four witnesses, including Anderson, saw Lewis fire several shots at the treed lion just before it fell to the ground dead. Yet Anderson contends that the evidence was legally insufficient to permit the jury to find that Lewis killed the lion or that Anderson knew Lewis killed the lion (and thus that it had been taken illegally). Anderson relies on his own testimony that he had shot at the lion four times and hit it at least once while he tracked it, and claims that this account put the evidence regarding cause of death in such equipoise that a finding of guilt beyond a reasonable doubt was impossible, citing *United States v. Richards*, 204 F.3d 177, 206 (5th Cir. 2000). If the evidence established that both men had in fact shot the lion, there might be force to this argument (though the timing of the lion's death may have been enough to attribute it to Lewis). Here, however, the jury was free simply to disbelieve Anderson's self-serving account, leaving no doubt about cause of death to be resolved at all. *See id.* (noting evidence must be in equipoise even when viewed in light most favorable to government).

No one else saw Anderson shoot at, much less hit, the lion. Three men followed Anderson's tracking efforts from the same vantage point that day, and only one–Anderson's longtime friend Sam Sickles–heard any shots; the others,

-9-

Lewis and a hunter who accompanied Sickles, heard no shots at all. Similarly, while Anderson and Sickles claimed to have seen blood specks on the ground where the lion had passed, the other men did not see any blood. Finally, none of the witnesses described the death scene–where Lewis alone was allowed to fire on the treed lion until it was killed–in a way that suggested Anderson had just labored for hours trying to take the animal for himself. Once again, we have conflicting evidence and a jury determination of that conflict which we must accept.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge